UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES ex rel. SHERRI MCDERMOTT, | |
| Plaintiff, | Civil Action No. 19-15360 (ES) (MAH) |
| v. | |
| LIFE SOURCE SERVICES, LLC, et al., | OPINION |
| Defendants. | |

I. INTRODUCTION

This matter comes before the Court by way of Defendants Life Source Services, LLC, Hersch Krausz, Karen D'Imperio, and Val Chapman's (collectively "Defendants") motion for an order compelling Relator Sherri McDermott ("Relator") to amend her First Amended Complaint to include claims raised against Defendants Life Source Services and D'Imperio in a parallel state-court action. Defs.' Mot. Regarding Amendment to the Pleadings, Apr. 8, 2022, D.E. 113 ("Defs.' Mot. to Amend Pleadings"). Defendants cite New Jersey's entire controversy doctrine and Federal Rule of Civil Procedure 15 as the bases for their requested relief. *See* Defs.' Br. in Supp., Apr. 8, 2022, D.E. 113-2, at pp. 1-2. Relator opposes the motion on both procedural and substantive grounds. Relator's Br. in Opp'n, Apr. 22, 2022, D.E. 119.

The Court has reviewed the parties' submissions in support of and in opposition to the instant motion and, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, has considered the motion without oral argument. For the reasons set forth below, Defendants' motion is **denied**.

1

## II. BACKGROUND

Defendant Life Source Services is an entity that provides hospice services in patients' homes and long-term care facilities.  First Am. Compl., Jan. 8, 2022, D.E. 87, at ¶¶ 12-14.  Defendant Krausz is Life Source Services's founding member. *Id.* at ¶ 15.  Defendants D'Imperio and Chapman are members of Life Source Services's management. *Id.* at ¶¶ 10, 56.  In 2017, D'Imperio was Life Source Services's executive director, and Chapman was its clinical coordinator. *Id.*  Relator, a New Jersey resident who has been licensed as a registered nurse since 1999, worked for Life Source Services as a case manager beginning in or around March 2017. *Id.* at ¶ 10.  In that role, Relator was supervised by D'Imperio and Chapman. *Id.* at ¶¶ 8, 56.

Relator initiated an action against Defendants Life Source Services and D'Imperio in Bergen County Superior Court on June 28, 2018.  *See* Exhibit A to Certification of Elizabeth F. Lorell, Esq., June 28, 2018, D.E. 113-5 ("State Court Complaint").  In *McDermott v. Life Source Services & Karen D'Imperio*, BER-L-4772-18 (hereinafter "the State Court Action"), Relator alleges that Life Source Services and D'Imperio violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12; the New Jersey Wage and Hour Law, N.J.S.A. 34:11-4.1 *et seq.*; the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.*; and New Jersey common law. *Id.* at pp. 8-13.  Specifically, she alleges that Life Source Services and D'Imperio failed to compensate Relator for administrative work completed outside of her regular hours, pretextually admonished her, and later terminated her in retaliation for her "complaint[s] about the lack of payment" and "refusal to file and sign a [sic] false patient notes or chart false information upon [Life Source Services and D'Imperio's] command and request." *Id.* at ¶¶ 1, 31-35, 38, 43-46.

Nearly one year later, on July 12, 2019, Relator initiated this *qui tam* action by filing a Complaint under seal against Defendants, Solomon Health Care, LLC, and Haworth Apothecary pursuant to the federal False Claims Act, 31 U.S.C. § 3729, and New Jersey False Claims Act, N.J.S.A. 2A:32C-10.  *See* Compl., July 12, 2019, D.E. 1, at ¶ 1.  The Complaint, as amended, alleges that beginning in or around March 2017, "Defendants engaged in a scheme to defraud Medicare and Medicaid in order to obtain reimbursements for the provision of hospice services and items to beneficiaries . . . for which Defendants were not entitled."  Am. Compl., D.E. 87, at ¶¶ 2-5.  Relator asserts that, as part of the scheme, Chapman and D'Imperio directed Relator to falsify hospice care records, such as by misreporting the severity of patients' true conditions to make them medically eligible for hospice care services.  *Id.* at ¶¶ 8, 10, 62-63.  Relator contends that after she repeatedly objected to these practices, she was wrongfully terminated on or about June 28, 2017.  *Id.* at ¶¶ 10, 99.  The Amended Complaint raises four causes of action:  Counts One and Two allege violations of the federal False Claims Act; Count Three alleges violations of the New Jersey False Claims Act; and Count Four alleges retaliation in violation of the anti-retaliation provisions of multiple federal and state laws, including CEPA.  *Id.* at ¶¶ 83-100.  Relator demands – on behalf of herself, the United States, and the State of New Jersey – treble damages for Defendants' violations of the federal and New Jersey False Claims Acts.  *Id.* at pp. 33-35.  Relator also seeks compensatory damages, attorneys' fees, and costs associated with Defendants' retaliation.  *Id.* at pp. 33-34.

Defendants filed the instant motion on April 8, 2022.  Defs.' Mot. to Amend Pleadings, D.E. 113.  Defendants argue Relator should be compelled to amend her First Amended Complaint to include all of the claims asserted in the State Court Action under the entire controversy doctrine and Federal Rule of Civil Procedure 15.  *Id.*  Chiefly, Defendants reason

that all claims in the State Court Action should be litigated in this matter because both cases "arise from the same core set of facts and both [c]omplaints have asserted liability and damage claims under New Jersey's CEPA statute." Defs.' Br. in Supp., D.E. 113-2, at p. 10 (emphasis removed). Relator opposes the motion. Relator's Br. in Opp'n, D.E. 119.

### III.  DISCUSSION

"The entire controversy doctrine is an equitable preclusionary doctrine. Its purpose is to encourage comprehensive and conclusive determinations, to avoid fragmentation and to promote party fairness and judicial economy." *Bonaventure Int'l, Inc. v. Borough of Spring Lake*, 350 N.J. Super. 420, 440 (App. Div. 2002). To that end, the doctrine "seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible." *Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*, 237 N.J. 91, 98 (2019). The doctrine, as codified by New Jersey Court Rule 4:30A, requires parties to an action to raise all of their transactionally related claims, causes, and defenses in that same action. *See id.*; *see also Carrington Mortg. Servs., LLC v. Moore*, 464 N.J. Super. 59, 67-68 (App. Div. 2020). Accordingly, "if a party withholds a constituent claim or fails to join a party and the case is tried to judgment or settled, that party 'risks losing the right to bring that claim later.'" *Kaselaan & D'Angelo Assocs. v. Soffian*, 290 N.J. Super. 293, 299 (App. Div. 1996) (quoting *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 324 (1995)).

>    The New Jersey Supreme Court has instructed that
>
>> In determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims . . . arise from related facts or the same transaction or series of transactions. It is the core set of facts that provides the link between distinct claims against the same or different parties and triggers the requirement that they be determined in one proceeding.

4

*DiTrolio v. Antiles*, 142 N.J. 253, 267-68 (1995).  The entire controversy doctrine's application "is left to judicial discretion based on the factual circumstances of individual cases." *Highland Lakes Country Club & Cmty. Ass'n v. Nicastro*, 201 N.J. 123, 125 (2009) (quoting *Oliver v. Ambrose*, 152 N.J. 383, 396 (1998)).  The polestar for application of the entire controversy doctrine is judicial fairness.  *Carrington Mortg. Servs.*, 464 N.J. Super. at 298.

  Defendants argue, and Relator seemingly concedes, that both this matter and the State Court Action arise from a single controversy:  Relator's employment at Life Source Services from March 10, 2017 through June 28, 2017, and Life Source Services's alleged unlawful termination of her for "'blowing the whistle' on purported improper conduct."  Defs.' Br. in Supp., D.E. 113-2, at pp. 8-9, 14; *see* Relator's Br. in Opp'n, D.E. 119, at pp. 8-10.  Relator nevertheless argues that the entire controversy doctrine does not apply because the doctrine requires a "final judgment in the prior action" and neither of her cases have reached a resolution.  Relator's Br. in Opp'n, D.E. 119, at pp. 8-9.  In making this argument, Relator relies upon *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883 (3d Cir. 1997).  Like Relator, the plaintiff in *Rycoline* first commenced litigation in the Superior Court of New Jersey.  *Id.* at 884.  One year later, Rycoline filed an action in federal court, "asserting essentially the same claims against defendants as are asserted in the state court action."  *Id.*  The district court dismissed the federal action "on the grounds that the action [was] barred by application of New Jersey's [e]ntire [c]ontroversy [d]octrine."  *Id.*  The United States Court of Appeals for the Third Circuit reversed, holding the doctrine "does not preclude the initiation of a second litigation before the first action has been concluded."  *Id.* at 889.

  Relator's position finds some support in *Kaselaan & D'Angelo Associates v. Soffian*, 290 N.J. Super. 293.  That matter involved an inverse procedural history:  the plaintiff filed an action

5

in the New Jersey Superior Court after initiating a case arising from the "same sequence of events" in federal district court. *Id.* at 296-97.  The Law Division denied the defendants' motion to dismiss based on the entire controversy doctrine, and the New Jersey Appellate Division affirmed. *Id.* at 296-97, 301.  The Appellate Division explained that the entire controversy doctrine "does not require dismissal when multiple actions involving the same or related claims are pending simultaneously," notwithstanding the concern that multiple pending, transactionally related actions pose a danger "of fragmented and duplicative litigation." *Id.* at 299.  The *Kaselaan* court suggested numerous procedural tools to prevent unfairness to the litigants and to avoid the waste of judicial resources, including a stay of the state court proceedings until the adjudication of the federal action. *Id.* at 300-01.

Since *Rycoline* and *Kaselaan*, however, the Appellate Division has cautioned against a "mechanistic application of the entire controversy doctrine." *J-M Mfg. Co., Inc. v. Phillips & Cohen, LLP*, 443 N.J. Super. 447, 459 (App. Div. 2015).  The Appellate Division has stressed that "courts should [instead] carefully examine the interests of the parties, expenditure of judicial resources, and any procedural mechanisms available to achieve a just result." *Id. J-M Manufacturing Co., Inc. v. Phillips & Cohen, LLP* is illustrative.  In that case, the plaintiff J-M filed a New Jersey Superior Court suit "based on the same transaction or series of transactions as [a] qui tam action" filed in California, three months after a California jury found against J-M on forty-nine claims of fraud. *Id.* at 452, 455.  When J-M initiated the New Jersey action, the California matter was pending resolution of a second phase limited to damages. *Id.* at 452.  The Law Division nevertheless dismissed J-M's complaint based on the entire controversy doctrine, and the Appellate Division affirmed. *Id.* at 452, 458-61.  The Appellate Division reasoned that although the California matter was not disposed, J-M "should not be able to effectively

6

indemnify itself for any portion of its qui tam liability" or "engage in the very forum shopping that the entire controversy doctrine is intended to avoid." *Id.* at 457.

Defendants themselves have represented that, unlike in *J-M Manufacturing*, the State Court Action is far from resolution. *See* Defs.' Br. in Supp., D.E. 113-2, at p. 15. A fact-finder has not determined the merits of Relator's state court claims; in fact, "[l]ittle discovery has taken place in the State Court Action." *Id.*; *see also* Certification of Elizabeth F. Lorell, Esq., Apr. 8, 2022, D.E. 113-4, at ¶ 15. The Court therefore finds the considerations underpinning *J-M Manufacturing* do not justify the entire controversy doctrine's application in this matter. In so ruling, the Court rejects Defendants' arguments that allowing Plaintiff to proceed with both lawsuits "would open up the floodgates for plaintiffs to forum shop . . . while the defendants pay double the necessary litigation costs." Defs.' Br. in Reply, May 6, 2022, D.E. 126, at pp. 5-6. "[E]fficient judicial management may be more complex when a related case is pending in a federal court or in the court of another state, [but] courts . . . have appropriate means to address those situations." *Kaselaan*, 290 N.J. Super. at 300-01. Defendants report that they have asked the New Jersey Superior Court to employ one such measure: Defendants moved to stay the State Court Action pending adjudication of the instant case. Defs.' Br. in Supp., D.E. 113-2, at p. 16; Exhibit 2 to Certification of Elizabeth F. Lorrell, Esq., Dec. 15, 2021, D.E. 113-29. The Court therefore holds that application of the entire controversy doctrine is contrary to the doctrine's goals of promoting party fairness, and will do nothing to further its goals of avoiding fragmentation and judicial economy. Accordingly, the Court denies the instant motion.

Even if the Court had found the entire controversy doctrine applicable – which it does not – Defendants have provided no case law, court rules, or statutes suggesting the Court may grant the relief Defendants request. The entire controversy doctrine states that "[n]on-joinder of

claims required to be joined . . . shall result in the *preclusion* of the omitted claims." N.J. Ct. Rule 4:30A (emphasis added). Courts applying the doctrine generally dismiss the claims filed in a successive action. *See, e.g.*, *J-M Mfg. Co., Inc. v. Phillips & Cohen, LLP*, 443 N.J. Super. at 458-61; *see also Mystic Isle Dev. Corp.*, 142 N.J. at 328. Defendants cite no cases wherein a court has compelled a plaintiff to amend their pleadings under the doctrine. The Court also struggles to reconcile Defendants' application with Federal Rule of Civil Procedure 15(a)(2). Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." No part of Federal Rule of Civil Procedure 15 states or implies a litigant may force their adversary to amend the adversary's pleadings. Defendants' motion is therefore denied on both substantive and procedural grounds.[1]

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for an order compelling Relator to amend her pleadings is **denied.**

*/s Michael A. Hammer*
Hon. Michael A. Hammer,
United States Magistrate Judge

Dated: June 15, 2022

---

[1] The Court cannot and will not address Defendants' question of whether they may or should raise the entire controversy doctrine after one of Relator's matters has concluded. *See* Defs.' Reply Br., D.E. 126, at p. 7.